# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 11 Case** |
|  | § |  |
| **LA VISTA PARTNERS, LP** | § |  |
|  | § | **CASE NO. 10-11842** |
| **Debtor.** | § |  |

## PROPOSED DISCLOSURE STATEMENT FOR THE
## DEBTOR'S PLAN OF REORGANIZATION

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

ATTORNEYS FOR DEBTOR

THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE COURT

00095310.000.DOCX

# TABLE OF CONTENTS

**Page No.**

I.     **INTRODUCTION**...................................................................................1

      A.    The Debtor .................................................................................1
      B.    Purpose of Disclosure Statement. ...............................................1
      C.    Explanation of Chapter 11 .........................................................2
      D.    Filing Proofs of Claim or Interest .............................................3
      E.    Voting on the Plan. ....................................................................4
      F.    Confirmation Hearing on the Plan. .............................................5

II.    **REPRESENTATIONS** ....................................................................6

III.   **INFORMATION CONCERNING THE DEBTOR**...........................7

      A.    History of Debtor and the Property ............................................7
      B.    Events During Bankruptcy and Current Status ..........................7
      C.    Litigation Claims ......................................................................8
      D.    Summary of Plan........................................................................9

IV.   **SUMMARY OF THE PLAN** ...........................................................9

      **A.**    **General**.....................................................................................9
          1.     United States Trustee Fees .................................................9

      **B.**    **Provisions for Treatment of Classes of Claims and Equity Interests** ..............9
          1.     Class I – Administrative Claims .........................................9
          2.     Class II – Priority Tax Claims.............................................10
          3.     Class III – Claims of General Unsecured Creditors ...........10
          4.     Class IV – Equity Interests .................................................10

      **C.**    **Means for Implementation of the Plan** ...................................10
          1.     Payment of Administrative Expense Claims .......................10
          2.     Payment of Allowed Tax Claims ........................................10
          3.     Payment to the United States Trustee .................................10
          4.     Documentation....................................................................11
          5.     Other Obligations of the Debtor.........................................11
          6.     Sources of Cash for Plan Distributions...............................11
          7.     Management.........................................................................11

     **D.**     **Feasibility**................................................................................................11

     **E.**     **Alternative to the Proposed Plan and Liquidation Analysis**............................12

     **F.**     **Risks to Creditors under the Debtor's Plan**.......................................................12

**V.**     **GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE**.....................12

     A.     Procedures for Resolving Contested Claims.........................................................12
     B.     Pending Litigation, Actions Pertaining to Fraudulent Transfers
          Voidable Preferences and Equitable Subordination; and
          Executory Contracts ...............................................................................................13

**VI.**     **SECURITIES LAWS CONSIDERATIONS**.............................................................13

**VII.**     **CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**...........13

**VIII.**     **CONFIRMATION OF THE DEBTOR'S PLAN** ....................................................14

     A.     Confirmation Hearing ............................................................................................14
     B.     Requirements for Confirmation of Plan.................................................................15
     C.     Cramdown..............................................................................................................16

**IX.**     **VOTING PROCEDURES AND REQUIREMENTS** ...............................................17

     A.     Ballots and Voting Deadline.................................................................................17
     B.     Creditors Entitled to Vote .....................................................................................18
     C.     Definition of Impairment ......................................................................................18
     D.     Classes Impaired Under the Debtor's Plan............................................................19
     E.     Vote Required for Class Acceptance .....................................................................19

**X.**     **IMPLEMENTATION OF THE PLAN** ....................................................................19

     A.     Modification to the Plan........................................................................................19
     B.     Retention of Jurisdiction .......................................................................................20

**XI.**     **CONCLUSION** .......................................................................................................20

| | § | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| LA VISTA PARTNERS, LP | § | |
| | § | CASE NO. 10-11842 |
| Debtor. | § | |

## PROPOSED DISCLOSURE STATEMENT FOR THE
## DEBTOR'S PLAN OF REORGANIZATION

I.    INTRODUCTION.

This Amended Disclosure Statement is submitted by La Vista Partners, LP . ("La Vista " or "Debtor") in connection with the Plan of Reorganization proposed by Debtor.

A.    The Debtor.

The Debtor, a Texas limited partnership, filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division, on July 2, 2010 (the "Petition Date"). Since that time, the Debtor has operated as the Debtor-in-Possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108. The Debtor owned a tract of real property and improvements thereon, consisting of a partially-developed condominium project known as "La Vista on Lavaca" (the "Property") located in Travis County, Texas. Capitalized terms used herein, but not expressly defined, are defined in Article I of the Plan of Reorganization ("Plan") proposed by the Debtor, the form of which is enclosed herewith.

B.    Purpose of Disclosure Statement.

The purpose of this Disclosure Statement is to enable the Creditors and holders of Interests in the Debtor, to make an informed decision with respect to the Plan prior to your vote on the Plan. After notice and a hearing, the Court approved this Disclosure Statement as containing information, of a kind and in sufficient detail, adequate to enable the Creditors and holders of Interests in the Debtor to make an informed judgment with respect to acceptance or rejection of the Plan. THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN.

00095310.000.DOCX

This Disclosure Statement should be read in its entirety prior to voting on the Plan. The voting process is discussed in <u>Section E</u> herein. This Disclosure Statement describes various transactions contemplated under the Plan. No solicitation of any vote for or against the Plan may be made except pursuant to this Disclosure Statement and §1125 of the Bankruptcy Code and no person has been authorized to utilize any information concerning the Debtor or their business other than the information CONTAINED in this Disclosure Statement. Each Creditor or holder of Interests is urged to study the Plan in full and to consult with your legal counsel about the Plan and its effect.

C.     Explanation of Chapter 11.

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, §362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect from a debtor claims that arose prior to the bankruptcy filing. Generally speaking, the automatic stay prohibits interference with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and interest holders. Chapter 11 also allows a debtor to utilize the provisions of the Bankruptcy Code to conduct an orderly liquidation of its assets, which is the situation in this case. Formulation of a plan of reorganization is the primary purpose of a reorganization case under Chapter 11 of the Bankruptcy Code. A plan of reorganization sets forth the means for satisfying the Creditors and holders of claims against, and interests in, a debtor. Generally, a claim against a debtor arises from a normal debtor/creditor transaction, such as a promissory note or a trade creditor. An interest in the debtor is held by a party that owns equity of the debtor, such as a partner in a partnership case or a stockholder in a corporate case.

After a plan has been filed with the Court, it must be accepted by holders of certain claims against, or interests in, the debtor. Section 1125 of the Bankruptcy Code requires a plan proponent to fully disclose to creditors and interest holders sufficient information about the debtor, its assets and the plan of reorganization before acceptances of that plan may be solicited. This Disclosure Statement is being provided to the Creditors and holders of Interests in the Debtor, to satisfy the requirements of §1125 of the Bankruptcy Code.

The Bankruptcy Code provides that claimants and interest holders are to be grouped into "classes" under a plan and that they will vote to accept or reject a plan by class. While bankruptcy courts have expressed various methods to be used in classifying claimants, a general rule of thumb is that creditors and interest holders with similar legal rights are placed together in the same class. For example, all creditors entitled to priority under the Bankruptcy Code might be placed in one class, while all creditors holding general unsecured claims might be placed in a separate class.

The Bankruptcy Code does not require that each holder of a Claim against the Debtor vote in favor of the Plan in order for the Court to confirm the Plan. Rather, the Plan must be accepted by each Class of Creditors (subject to an exception discussed below). In order for the Plan to be accepted by a Class of Creditors, those Creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of Allowed Claims actually voting on the Plan in such Class must vote for the Plan. For example, if a Class has ten (10) Creditors that vote and the total dollar amount of those ten (10) Creditors' claims is $1,000,000, then for such Class to have accepted the Plan, six (6) or more of those Creditors must have voted to accept the Plan (a simple majority) and the Claims of the Creditors voting to accept the Plan must exceed $666,667 (a 2/3 majority).

The Court may confirm the Plan even though fewer than all Classes of Claims and Interests vote to accept the Plan. In this instance, the Plan must be accepted by at least one "impaired" Class of Claims, without including any acceptance of the Plan by an insider. Section 1124 of the Bankruptcy Code defines "impairment" and generally provides that a claim which will not be repaid in full or as to which legal rights are altered under a plan is deemed to be "impaired." An interest that is adversely affected under a plan is deemed to be "impaired." Under the Plan, all classes except Classes I and II are impaired.

Even if all impaired Classes of Claims or Interests under the Plan do not vote to accept the Plan, the Plan Proponent (i.e., in this Plan, the Debtor and the Committee) may nevertheless request the Court to confirm the Plan pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. Those provisions permit the Plan to be confirmed over the objections of Creditors or holders of Interests if the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting Class of Claims or Interests.

Independent of the acceptance of the Plan by all Classes of Claims and Interests, in order to confirm the Plan, the Court must determine that the requirements of § 1129(a) of the Bankruptcy Code have been satisfied. See infra "Requirements for Confirmation of the Plan," Article IX, for a complete discussion of the § 1129(a) requirements for confirmation of a plan of reorganization. The Debtor believes that the Plan satisfies each of the requirements of § 1129(a) of the Bankruptcy Code for confirmation.

Confirmation makes the Plan binding upon the Debtor, all Creditors and Interest Holders, and other parties in interest, whether or not they have accepted the Plan.

D.    Filing Proofs of Claim or Interest.

In order to participate in the payments and other distributions under the Plan, a Creditor must have an Allowed Claim against, or Interest in the Debtor. The first step in obtaining an Allowed Claim or Interest is generally filing a Proof of Claim or Proof of Interest.

A Proof of Claim or Proof of Interest is deemed filed for any Claim or Interest that appears in the Schedules which were filed in this case, except a Claim or Interest that is scheduled as disputed, contingent, unliquidated or in an unknown amount. In other words, if a Creditor or Interest Holder agrees with the amount of the Claim or Interest as scheduled by the Debtor and that Claim or Interest is not listed in the Schedules as being disputed, contingent, or unliquidated, it is not necessary that a separate Proof of Claim or Proof of Interest be filed.

Claims or Interests that are unscheduled, or which are scheduled as disputed, contingent, or unliquidated, or which vary in amount from the amount claimed by the Creditor or Interest Holder shall be recognized and allowed only if a Proof of Claim or Proof of Interest is timely filed. The Schedules are on file with the Clerk of the Court and are available for inspection during regular Court hours. The Court set a deadline of November 8, 2010 for filing Proofs of Claim or Proofs of Interest by non-government Claimants in this case.

E.      Voting on the Plan.

The Debtor is soliciting acceptances of the Plan from the Creditors and holders of Interests in Classes II and III. Each of these Classes is impaired under the Plan. All other Classes consist of Creditors whose treatment is payment in full and who are not entitled to vote under the Plan because they are unimpaired. Pursuant to the Bankruptcy code and Rules, such Classes are deemed to have accepted the Plan.

Each Creditor or Interest Holder entitled to vote on the Plan as of the date the Court approves this proposed Disclosure Statement may vote by completing, dating and signing a ballot enclosed with this Disclosure Statement as instructed below. Any holder of an Allowed Claim or Interest in Classes II and III is entitled to vote to accept or reject the Plan.

Any Claim as to which an objection is filed is not entitled to vote, unless the Court, upon application or motion of the Creditor or Interest Holder whose Claim has been objected to, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. A vote may be disregarded or disallowed if the Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

BEFORE COMPLETING YOUR BALLOT, PLEASE READ THE VOTING INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT CAREFULLY. After completing, dating and signing the ballot, your ballot must be delivered to counsel for the Debtor at the following address in order to be counted:

Hohmann, Taube & Summers, L.L.P.
Attention: La Vista Ballots
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Telephone: (512) 472-5997
Facsimile: (512) 472-5248

IN ORDER TO BE COUNTED YOUR BALLOT MUST BE ACTUALLY RECEIVED AT THE FOREGOING ADDRESS NO LATER THAN 5:00 P.M. CENTRAL TIME, ON MAY 17, 2011. IF YOUR BALLOT IS ACTUALLY RECEIVED AFTER THAT DATE AND/OR TIME, IT MAY NOT BE COUNTED.

Ballots may be cast by facsimile transmission to counsel for the Debtor (512) 472-5248, provided:

- the facsimile is actually received and time-stamped prior to the voting deadline; and

- the original signed ballot, postmarked no later than the day of the voting deadline, is mailed to and received by counsel for the Debtor.

IN ORDER TO AVOID THE POSSIBILITY OF YOUR FACSIMILE VOTE BEING BACKED UP IN TRANSMISSION AND NOT BEING COUNTED, YOU ARE REQUESTED TO DISPATCH YOUR TRANSMISSION PRIOR TO 6:00 O'CLOCK P.M., CENTRAL TIME, ON THE DAY BEFORE THE VOTING DEADLINE.

Ballots that are signed and timely returned to the address indicated above, but which do not expressly indicate a vote either to accept or reject the Plan will be counted by the Debtor as an acceptance of the Plan.

F.    Confirmation Hearing on the Plan.

Section 1128(a) of the Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of a plan of reorganization. As indicated previously, the Court has scheduled the Confirmation Hearing on the Plan for _____ at _____ o'clock ___.m. before the Honorable H. Christopher Mott, United States Bankruptcy Judge, in his courtroom, Homer Thornberry Bldg., 903 San Jacinto, Austin, Texas.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be made in writing. Written objections to confirmation of the Plan, if any, must be filed with the Court and a copy of such written objections must be actually received by counsel for the Debtor at the above address, on or before

5:00 p.m., Central Time, on _____, 2011. Objections not timely filed and <u>actually received</u> by the Debtor's counsel will not be considered by the Court.

II.    REPRESENTATIONS.

NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS ASSETS WHICH ARE BASED SOLELY UPON THE DEBTOR'S ESTIMATES UNLESS OTHERWISE EXPRESSLY STATED HEREIN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, MARK C. TAYLOR, HOHMANN, TAUBE & SUMMERS, L.L.P., 100 CONGRESS AVE., 18th FLOOR, AUSTIN, TEXAS 78701, WHO SHALL DELIVER SUCH INFORMATION TO THE COURT WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SERVICES. FOR THIS REASON, THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO BE ACCURATE. THIS DISCLOSURE STATEMENT CONTAINS ONLY A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY TERMS AND PROVISIONS OF THE PLAN. EACH CREDITOR, INTEREST HOLDER, AND PARTY-IN-INTEREST IS URGED TO REVIEW THE PLAN IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS, INTEREST HOLDERS, AND PARTIES-IN-INTEREST TO MAKE AN INFORMED DECISION ABOUT THE PLAN. ALL REPRESENTATIONS HAVE BEEN MADE AS OF THE DATE HEREOF, AND THERE SHALL BE NO IMPLICATION THAT THERE HAS NOT BEEN OR CANNOT BE A CHANGE IN CIRCUMSTANCES SINCE THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THIS PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

III.     INFORMATION CONCERNING THE DEBTOR.

     A.     History of Debtor and the Property.

The Debtor was organized to purchase a partially-constructed condominium complex located at 1701 Lavaca Street, Austin, Texas, known as "La Vista on Lavaca" (the "Property"). Jimmy Nassour and H.M. Pike, Jr, the managers of the Debtor's general partner purchased the Property and all rights relating thereto (including, but not limited to, plans, permits, personal property, and intellectual property rights) from 1701 Lavaca, LP, 1701 Mortgage, LLC and Mary Guerrero-McDonald (collectively "Seller") pursuant to a Purchase and Sale Agreement dated as of September 3, 2008 (the "Agreement"). The Agreement was assigned to the Debtor pursuant to an "Assignment of Purchase and Sale Agreement" dated September 4, 2008. The Agreement was subsequently amended by a "First Amendment to Purchase and Sale Agreement" dated as of September 15, 2008. At the time of the purchase, development of the project had stalled, and substantial amounts were due to contractors and vendors of the Seller. The purchase was funded in large part through a $3,100,000 loan obtained from Service Life & Casualty Insurance ("Lender"), and over $2.3 million from the loan proceeds went to pay existing bills due to contractors and vendors. The sale closed on October 29, 2008.

Following the purchase, the Debtor re-engaged the general contractor, Precept Builders, to continue construction of the project. Debtor obtained additional financing from SLC in January 2009 ($1,840,000) and June 3, 2009 ($1,750,000) and was actively seeking financing from other sources to retire the indebtedness and to obtain additional funding for construction. As set forth below, disputes developed between the Debtor and Precept, and with Ms. Guerrero-McDonald. Ultimately, the Debtor could not locate funding to retire the indebtedness to SLC and could not obtain additional funding from SLC. SLC posted the Property for a July, 2010 foreclosure, resulting in the filing of the Petition on July 2, 2010.

     B.     Events During Bankruptcy and Current Status.

Prior to the bankruptcy filing, in addition to seeking financing, the Debtor was seeking potential buyers for the Property. On July 20, 2010, the Debtor filed a Motion to Approve Sales Procedures to approve a sale to Highbrook Management, LLC for $8,465,000.00, subject to higher and better offers. No higher offers were received, and the Debtor hoped to proceed to close. Unfortunately, through no fault of the Debtor, Highbrook determined not to proceed with the sale, and the Debtor was unable to locate another buyer. The Debtor faced loss of permits if construction did not resume by December 2010. In order to permit the loss of the Permits, which would have

resulted in additional loss of value, SLC filed a Motion for Relief from the Stay on October 6, 2010, which the Debtor joined. The Bankruptcy Court granted the Motion by Order dated October 22, 2010. SLC foreclosed on the Property on December 7, 2010.

C.    Litigation Claims.

The Debtor has identified and holds certain valuable claims and causes of action, including:

Claims Against Precept Builders:

At closing of the Debtor's purchase of the Property, Precept received payment of $485,000.00, and its subcontractors were paid additional sums from the SLC loan proceeds. At the time, Precept asserted that it was entitled to additional amounts in excess of #1.5 million, which the Debtor disputed. On April 7, 2009, Precept submitted its pay application No. 4, seeking payment of $655,704.66. On April 12, 2009, the Debtor wire transferred $510,000.)) to Precept for partial payment. Thereafter, on May 10, 2009, the Debtor received a letter from Capform, Inc., a subcontractor, advising the Debtor that Capform was owed $886, 179.00 for labor and materials. The Debtor then learned that Precept had retained and paid to itself the $510,000.00, and had also apparently failed to pay Capform from other draws. The Debtor was forced to use additional funds to make payments, resulting in a funding shortfall that adversely affected the project and construction progress. The Debtor intends to assert claims for breach of contract, violation of the Texas Trust Fund Statute, breach of fiduciary duty, fraud, conversion, and recovery of fraudulent conveyances.

Claims Against Kennedy Funding, Inc.:

On August 27, 2008, the Debtor entered a Loan Commitment (the "Commitment") with Kennedy Funding, Inc. ("Kennedy"). Pursuant to the Commitment, Kennedy agreed to provide funding of $20,100,000,00 to the Debtor. The Debtor paid a commitment fee of $301,500.00, with the remainder due at Closing. Kennedy wholly failed to perform under the Commitment and provided no financing. Debtor intends to assert claims for breach of contract, recovery of fraudulent conveyances and, possibly, fraud.

Claims Against Mary Guerrero-McDonald:

Ms. Guerrero-McDonald was one of the original Sellers, and is a limited partner of the Debtor. Ms. Guerrero-McDonald sued the Debtor's general partner and its Managers, Jimmy Nassour and H.M. Pike, Jr. in Travis County state District Court on October 28, 2010. The Debtor intervened in the action and removed the action to the Bankruptcy Court, where it is pending as Adversary No. 10-01162 (the "Adversary Proceeding"). Debtor has filed a Complaint in Intervention in the Adversary Proceeding, contending that certain of the claims and causes of action are property of the Estate. Debtor has also asserted claims against Ms. McDonald for breach of fiduciary duty,

tortiuos interference and business disparagement. Please refer to the Complaint in Intervention for more detail.

D.     Summary of Plan.

The Plan contemplates that the Reorganized Debtor will pursue the Litigation Claims, with recoveries being paid to creditors on a pro-rate basis within classes, in the order of priority of such classes.

## IV.     SUMMARY OF THE PLAN

A.     General.

Enclosed with this Disclosure Statement is a complete copy of the Debtor's Plan of Reorganization. For specific details of the Plan of Reorganization, reference should be made to the Plan in its entirety. All capitalized terms used herein shall have the meanings as set forth in Article I of the Plan. The summary provided below is merely for the convenience of anyone reading the Disclosure Statement and to the extent that this summary in any way conflicts with the actual Plan, the terms of the Plan will prevail.

1.     <u>United States Trustee Fees</u>. All fees and charges assessed against the Debtor or its Estate under Chapter 123 of Title 28 of the U.S. Code, 28 U.S.C. §§ 1911-1930 shall be paid in full in Cash.

B.     Provisions for Treatment of Classes of Claims and Equity Interests.

<u>Class I – Administrative Claims</u>. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one(1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar

date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is not impaired.

      2.    <u>Class II – Priority Claims</u>. Each holder of a Class II Priority Claim, if any, shall receive its prorata share of proceeds of recoveries from Litigation Claims. Class II is impaired. Debtor believes there are no Priority Claims.

      3.    <u>Class III – Claims of General Unsecured Creditors.</u>  Each holder of an allowed General Unsecured Claim shall receive its prorata share of proceeds of recoveries from Litigation Claims, after payment of Class II Allowed Claims. This class is impaired. The Debtor has scheduled approximately $6.9 million in unsecured claims, of which at least $4.3 million are disputed. These amounts do not include the deficiency claim of SLC, the amount of which has not been determined.

      4.    <u>Class IV – Equity Interests.</u> Holders of Equity Interests of the Debtor shall retain their Interests, but shall not receive any distributions or any other property until all senior classes are paid in full.

C.    Means for Implementation of the Plan.

      1.    Payment of Administrative Expense Claims.

Administrative Claims shall be paid pursuant to the terms of the Plan from cash held by Debtor. The only administrative claims known to the Debtor are the professional fees of Debtor's counsel.

      2.    Payment of Allowed Priority Claims.

The Debtor believes that property taxes have been paid, and is not aware of any Priority Claims.

      3.    Payment to the United States Trustee.

All fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a) shall be paid as and when they become due.

4.      Documentation.

The Debtor shall prepare all documentation to be executed in connection with the Plan, subject to approval by the Court. The Debtor shall execute documents necessary to effectuate the Plan.

5.      Other Obligations of the Debtor.

The Debtor shall (i) review all Claims filed against the Estates, and if advisable, object to Claims, and (ii) investigate, prosecute, settle or dismiss all Debtor's causes of actions.

6.      Sources of Cash for Plan Distributions.

Except as otherwise provided in the Plan or the Confirmation Order, all cash necessary for the Debtor to make payments pursuant to the Plan shall be obtained from the proceeds recovered from Litigation Claims.

7.      Management.

The Debtor will continue to be managed by Jimmy Nassour and H.M. Pike, Jr., Managers of the Debtor's general partner.

D.      Feasibility.

The only issue as to feasibility is the ability to fund the fees and costs to pursue the Litigation Claims. Debtor believes that the Plan is feasible based upon the ability and willingness of the Debtor's insiders and /or affiliates to provide funding for such amounts.

E.      Alternative to the Proposed Plan and Liquidation Analysis.

Other alternatives to the Plan include (i) liquidation under Chapter 7, (ii) the dismissal of the bankruptcy case, or (iii) the proposal and acceptance of an alternative plan of reorganization. The Debtor is unaware of any alternative plan. Dismissal would result in loss of certain rights and claims under the Bankruptcy Code, including the ability to conduct the claims objection procedures to eliminate claims that are not valid. Conversion to a Chapter 7 would result in appointment of a Trustee. Though the Trustee could pursue Litigation Claims, there would be no funding to do so, and would require locating counsel willing to accrue fees or take the case on a contingency fee basis and to front the litigation expenses.

F.       Risks to Creditors under the Debtor's Plan.

The risks to administrative, priority and unsecured creditors under the Plan are dependent upon the Reorganized Debtor's ability to obtain recoveries on the Litigation Claims. Though the Debtor believes the Litigation Claims are meritorious, they are subject to final determination by a court and/or jury and, as such, contain inherent uncertainty.

V.       GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE.

A.       Procedures for Resolving Contested Claims.

The Debtor shall have the sole right and duty to review Claims and object to the Proof of Claim filed by any party or claimant, if appropriate. Objections to Claims must be filed with the Bankruptcy Court no later than 60 days after the Effective Date and served upon the holders of each of the Claims to which objections are made. The Debtor has not completed a claims analysis. Any and all claims in all classes may be subject to objection.

If the Debtor files an objection to a Claim, the Creditor shall file a response to any such objection within twenty (20) days from the mailing date set out in the certificate of service for the objection. Responses may take one of two forms, namely, a consent to the objection, or a non-consenting response. A non-consenting response shall state specific reasons for allowance of the claim (and all parts there), shall list the names and addresses of any and all witnesses to be called in support of the response, and shall include copies of all documents (including invoices, security documents and the like) relied upon by the non-consenting party to support allowance of the Claim or Interest. Copies of such responses shall be served upon the attorneys for the Debtor. Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the thirty (30) day period, the Court may enter an order without further notice or hearing, in the event a timely non-consenting response is filed, the Court shall set a hearing on not less than thirty (30) days' notice to the parties in accordance with Bankruptcy Rule 3007.

The Debtor shall have responsibility for litigating, withdrawing or resolving all objections to claims after the Effective Date.

Except as otherwise provided in the Plan, the allowance of any pre-petition Claim, the resolution of any Claim dispute, or the payment of such Claims shall not, absent an express contrary ruling by the Court, operate as a bar, by application of the principles of res judicata or collateral estoppel, to the recovery of pre-petition Claims or the exercise of any right of setoff held by the Debtor with respect to the Claims held by the affected Claimants. To the extent such right of offset is not resolved in the Claim objection process, any affected Claimant shall retain its right of offset of mutual Claims as provided in §553 of the Bankruptcy Code.

Any amendments to claims previously filed must be filed prior to the Effective Date or they will be void.

   B.   Pending Litigation, Actions Pertaining to Fraudulent Transfers, Voidable Preferences and Equitable Subordination; and Executory Contracts.

There is no pending litigation regarding preferences, fraudulent transfers or subordination claims, but the Debtor, reserves the right to investigate and bring appropriate actions for recovery of fraudulent transfers or voidable preferences. The Debtor does not believe it has made any preferential transfers, and does not have any executor contracts.

Any party which has done business with the Debtor may be sued for affirmative claims, avoidance of transactions, preferences or for any other actions under applicable law.

## VI.   SECURITIES LAWS CONSIDERATIONS.

No securities are being issued pursuant to the Plan.

## VII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.

The transactions contemplated by the confirmation of the plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to the creditor or interest holder.

An analysis of federal income tax consequences of the plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. Neither the Debtor nor the Debtor's counsel have requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

THOUGH THE DEBTOR DOES NOT BELIEVE THE DEBTOR HAS NOT RETAINED OR CONSULTED WITH A TAX ATTORNEY OR ACCOUNTANT TO DETERMINE WHETHER THE BONDS WILL RETAIN THEIR TAX-EXEMPT STATUS FOLLOWING CONFIRMATION, AND CREDITORS ARE ENCOURAGED TO SEEK THEIR OWN ADVICE ON THIS ISSUE.

THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH

CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

## VIII.   CONFIRMATION OF THE DEBTOR'S PLAN.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

### A.   Confirmation Hearing.

The Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of the plan, at which any party-in-interest may object to confirmation of the Plan.

The date and time of the hearing on confirmation of the Plan will be set forth in a notice to each Creditor. The hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the hearing or any adjournment thereof. Any objection to confirmation of the Plan must be made in writing and filed with the Court and served upon the Debtor's counsel at the address listed below, together with proof of service, on or before the date set by the Court:

Hohmann, Taube & Summers, L.L.P.
100 Congress, 18th Floor
Austin, Texas 78701
Attention: Eric J. Taube
512/472-5997
512/472-5248 (FAX)

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE COURT.

### B.   Requirements for Confirmation of Plan.

At the hearing on confirmation of the Plan, the Court shall determine whether the requirements of §1129 of the Bankruptcy Code have been satisfied, in which event the Court shall enter an order confirming the Plan. These requirements are as follows:

1.   The Plan complies with the applicable provisions of the Bankruptcy Code.

2.   The Debtor and Debtor's counsel have complied with the applicable provisions of the Bankruptcy Code.

00095310.000.DOCX                                                                                      14

3.     The Plan has been proposed in good faith and not by any means forbidden by law.

4.     Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the Chapter 11 Case or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Court as reasonable.

5.     The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and Equity Security Holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor and the nature of any compensation for each insider.

6.     Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor have approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.     With respect to each impaired class of Claims or Equity Security Holders, either each holder of a Claim or Equity Security Interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Security Interest, property of a value, as of the Plan Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.

8.     Each class of Claims or Equity Security Interest has either accepted the Plan, is not impaired under the Plan or is subject to cramdown.

9.     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full on the Plan Effective Date and that Priority Tax Claim will receive on account of such Claims deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such Claim, of a value, as of the Plan Effective Date, equal to the allowed amount of such Claim.

10.   At least one class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class.

11.   Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

12.   The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11 and that the proposal of the Plan is made in good faith.

13.   The Debtor believes that the holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Plan Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

C.   Cramdown.

In the event that any impaired class of Claims or Interests does not accept the Plan, the Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its Claims or Equity Security Interests. "Fair and equitable" has different meanings for Secured Claims and Unsecured Claims.

With respect to a Secured Claim, "fair and equitable" means either: (i) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value of the Plan Effective Date at least equal to the value of such Secured Creditor's interest in the property securing its liens; or (ii) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired Secured Creditor realizes the "indubitable equivalent" of its claim under the Plan.

With respect to an Unsecured Claim, fair and equitable" means either (i) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (ii) the holders of the Claims and Equity Security Interests that are junior to the Claim of the dissenting class will not receive any property under the Plan.

With respect to an Interest, "fair and equitable" means either (i) each holder of an Impaired Interest of such Class receives property of a value equal to the greatest of (a) the allowed amount of any fixed liquidation preference to which such holder is entitled, or (b) any fixed redemption price to which such holder is entitled, or (ii) the value of such Interest that is junior in priority to the Interests of the dissenting Class will not receive any Property under the Plan.

The absolute priority rule set forth in §1129(b)(2)(B) of the Bankruptcy Code requires a cram-down of a plan of reorganization over a dissenting creditor class to meet an "either/or" test. Either (i) the members of each dissenting impaired class of unsecured claims must receive property of a value, as of the effective date of the plan, equal in amount to such class members' allowed claim; or (ii) holders of claims and interests that are junior to each dissenting impaired class of claims must not receive any property under the plan of reorganization. The absolute priority rule applies only in cases when a class of claims or Equity Interests is both impaired and does not accept the plan. Thus, the absolute priority rule does not apply to all classes of claims and Equity Interests but only to the dissenting class and classes junior to the dissenting class. The Debtor believes that the Plan satisfies the absolute priority rule. Additionally, the Plan provides for an infusion of new value by existing equity holders for retention of their interests.

In the event one or more classes of impaired Claims or Interests rejects the Plan, the Court will determine at the hearing for confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claim. If the Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims or Interests, the Court can confirm the Plan over the objection of any impaired class.

## IX. VOTING PROCEDURES AND REQUIREMENTS.

### A. Ballots and Voting Deadline.

In addition to this Disclosure Statement and a copy of the Plan, each Creditor entitled to vote will hereafter be provided with a ballot to be used for voting to accept or reject the Plan.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Debtor's counsel by 5:00 p.m. on _____, 2011.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

> Hohmann, Taube & Summers, L.L.P.
> Attention: La Vista Ballots
> 100 Congress, 18th Floor
> Austin, Texas 78701
> Facsimile: (512) 472-5248

B.    Creditors Entitled to Vote.

Any Creditor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of Claim on or before the first date set by the Court for such filings. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allowed the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the Creditor. Such application must be heard and determined by the Court at such time as specified by the Court. A Creditor's vote may be disregarded if the Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

C.    Definition of Impairment.

Under §1124 of the Bankruptcy Code, a class of Claims or Equity Security Interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:

1.    Leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Equity Security Interest; or

2.    Notwithstanding any contractual provision or applicable law that entitled the holder of a Claim or Equity Security Interest to receive accelerated payment of its Claim or Equity Security Interest after the occurrence of default:

(a)    Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

(b)    Reinstates the maturity of such Claim or Equity Security Interest as it existed before the default;

(c)    Compensates the holder of such Claim or Equity Security Interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(d)     Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Security Interest entitles the holder of such Claim or Equity Security Interest.

D.     Classes Impaired Under the Debtor's Plan.

The following classes of Claims and Interests are impaired under the Plan, and Creditors and Interest Holders holding Claims in such classes are entitled to vote to accept or reject the Plan: Classes II and III.  All other classes are either unimpaired under the Plan and are deemed to have accepted the Plan, or not receiving anything under the plan.

E.     Vote Required for Class Acceptance.

The Bankruptcy Code defines acceptance of a Plan by a class of creditors or Equity Security Interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Equity Security Interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two thirds percent (66 2/3%) in amount of claims and Equity Security Interests in each class and more than fifty percent (50%) of Claims or Equity Security Interests voting in each class cast their ballots in favor of acceptance.

X.     IMPLEMENTATION OF THE PLAN.

When the Plan is approved by the Court, the Bankruptcy Judge will sign an Order Confirming the Plan. The Effective Date will be the date set for the closing of the transactions contemplated by the Plan, which will be the first business day following the expiration of ten (10) days from the date of entry of the Order Confirming the Plan.

A.     Modification to the Plan.

Section 1127(a) of the Bankruptcy Code permits the Debtor to amend or modify the Plan at any time prior to Confirmation. Post-confirmation modifications of the Plan are allowed under §1127(a) of the Bankruptcy Code, if the proposed modification is offered before the Plan has been substantially consummated or pursuant to an article of the confirmed Plan authorizing the intended modification. The Debtor and Committee reserve the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event that the Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosure pertaining to the proposed modification will be required only if the Court finds, at the hearing, that the pre-confirmation modifications adversely change the treatment of any Creditor or Equity Security Interest holder who has previously accepted the Plan. If the proposed pre-confirmation modification is material and adverse, or if a post confirmation modification is sought,

the Debtor intends to supplement this Disclosure Statement to describe the changes made in the Plan and the reasons for any proposed modifications.

B.      Retention of Jurisdiction.

As set forth in the Plan, the Court will retain Jurisdiction over substantially all matters arising in connection with the Chapter 11 Case and the Plan.

XI.     CONCLUSION.

The Debtor believes that the treatment afforded creditors under the proposed Plan provides the best alternative to its Creditors, and urges that you vote in favor of the Plan.

DATED this 7th day of February 2011.

LA VISTA PARTNERS, LP

By:     LA VISTA PARTNERS - GP,LLC,
general partner

By: /s/ H.M. Pike, Jr.
H.M. Pike, Jr., Manager

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.

By: /s/Mark C. Taylor
Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

ATTORNEYS FOR DEBTOR

# SERVICE LIST

AFCO
12160 Abrams Rd
Dallas, TX 75243

Armbrust Brown
100 Congress
Suite 1300
Austin, TX 78701

Asbestos Consulting
4411 Spicewood Springs Road
Austin, TX 78759

Austech Roof Consultants, Inc
2312 Wester Trails Blvd
Suite 403
Austin, TX 78745

Bank Direct
2 Conway Park
150 Northfield Drive
Suite 190
Lake Forrest, IL 60045

Bury Partners
221 West 6th
Suite 600
Austin, TX 78701

C&CTX Concrete Pumping, Inc.
P.O. Box 2071
Kyle, TX 78640

Cananwill, Inc.
5447 East 5th Street
#110
Tuscon, AZ 85711

Capform, Inc.
1455 Halsey Way
Carrollton, TX 75007

Centex Materials
817 East St. Elmo Rd.
Austin, TX 78745

Centex Sash and Door
2022 Centimeter Circle
Austin, TX 78758

Central Texas Refuse
9316 FM 812
Austin, TX 78719

Central Texas Reinforcement, Inc.
P.O. Box 150277
Austin, TX 78715

CIT Technology Financing Svcs
c/o McCarthy, Burgess & Wolff
26000 Cannon Road
Cleveland, OH 44146

City of Austin Street Closure
P.O. Box 1088
Austin, TX 78767

City of Austin Utilities
721 Barton Springs
Attn: Legal
Austin, TX 78704

CMC Capital City Steel
800 N. IH 35
Austin, TX 78701

Comfort Systems USA
9601 Dessau Rd.
Bldg. 3, Suite 303
Austin, TX 78754-3961

Commerce Street.com
2105 E. Division St.
Arlington, TX 76011

CTA Architects
3601 S. Congress Avenue
Building B, Suite 200
Austin, TX 78704

Datum Engineers
5929 Balcones Dr.
Suite 100
Austin, TX 78731

Documation
1556 International Dr.
Eau Claire, WI 54701

Fondren Family
c/o Boone Almanza
Almanza, Blackburn & Dickie LLP
2301 S. Capital of Texas Hwy.,
Bldg. H
Austin, TX 78746

Gene Fondren
c/o Molly Mitchell
Almanza, Blackburn & Dickie LLP
2301 S. Capital of Texas Hwy.,
Bldg. H
Austin, TX 78746

Guerrero-McDonald
  & Associates, Inc
P.O. Box 160518
Austin, TX 78715

Harrison Pearson
4014 Medical Parkway
Suite 100
Austin, TX 78756

Holt Engineering
2220 Barton Skyway
Austin, TX 78704

Icon Plumbing, Heating, and Air,
Ltd.
4903 Commercial Park Drive
Austin, TX 78724

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19114

Jimmy Nassour/Jim Mattox
3839 Bee Cave Road
Suite 200
Austin, TX 78701

KDR Electric Services, Inc
P.O. Box 82221
Austin, TX 78708

LAZ Parking, Texas LLC
101 West 6th
Suite 515
Austin, TX 78701

Lewis Equipment Company, L.P.
1400 West Shady Grove
Grand Prairie, TX 75050

Liquid Waste Solutions
11512 Via Grande Dr.
Austin, TX 78739

Mary Guerrero-McDonald
P.O. Box 160518
Austin, TX 78716-0518

Mechanical Technical Services Inc.
(MTECH)
c/o Calley D. Callahan
7600 N. Capital of Texas Hwy
Suite B-110
Austin, TX 78731-1136

Milestone Metals
113 West Lorino
Houston, TX 77037

Modspace
16200 Central Commerce Dr.
Pflugerville, TX 78660

Morales and Associates, Inc.
2705 Bee Cave Road
#230
Austin, TX 78746

MJD Moving Inc. d/b/a Movecorp
9230 Neils Thompson Drive, #102
Austin, TX 78758

National Construction Rentals
116 Nell Deane
Schertz, TX 78154

Nelda Wells Spears, Tax Collector
P.O. Box 149328
Austin, TX 78714

Nline Traffic Maintenance LLC
P.O. Box 4750
Bryan, TX 77805

Pat Laffey, CPA
603 Davis
#1503
Austin, TX 78701

Precept Builders, Inc.
1909 Woodall Rogers Freeway
Suite 300
Dallas, TX 75201

Precept Builders Inc.
c/o Anthony P. Jach
Griffith Nixon Davison PC
Two Lincoln Centre
5420 LBJ Fwy, Ste. 900
Dallas, TX 75240

Precept Commercial, LLC
1909 Woodall Rogers Freeway
Suite 300
Dallas, TX 75201

Precept Commercial LLC
c/o Anthony P. Jach
Griffith Nixon Davison PC
Two Lincoln Centre
5420 LBJ Fwy, Ste. 900
Dallas, TX 75240

Recon Services
P.O. Box 869
Dripping Springs, TX 78620

Rock Island Rigging, LLC
1400 West Shady Grove
Grand Prairie, TX 75050

Service Life & Casualty Ins. Co.
c/o Hightower & Assoc.
3006 Bee Cave Rd
Pallisades Suite D-200
Austin, TX 78746

Service Life & Casualty Ins. Co.
c/o Marvin E. Sprouse III
Jackson Walker LLP
100 Congress Avenue, Suite 1100
Austin, TX 78701

Sneed Vine & Perry
Attn: William Brown
901 Congress Avenue
Austin, TX 78701

Stuart Allan & Associates
5447 East 5th St., Ste. 110
Tucson, AZ 85711-2345

The Sutton Company
2703 Swisher
Office Suite
Austin, TX 78705

Time Warner Cable
P.O. Box 66097
Dallas, TX 75266

Tippen Fabrication and Erection,
Inc
100 East Lawrence Street
Boyd, TX 76023

Travis County
c/o Karon Y. Wright
P.O. Box 1748
Austin, TX 78767-1748

U.S. Trustee
903 San Jacinto Blvd., Suite 230
Austin, TX 78701

Waterfilled Barriers, Inc.
P.O. Box 13
Paige, TX 78659

William Gammon Insurance
1615 Guadalupe Street
Austin, TX 78701

**Parties Requesting Notice**
Lewis Equipment Co. Inc.
c/o Munsch Hardt Kopf & Harr
Attn: Davor Rukavina/Kathleen M.
Patrick
3800 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201-6659

Rock Island Riggins, LLC
c/o Munsch Hardt Kopf & Harr
Attn: Davor Rukavina/Kathleen M.
Patrick
3800 Lincoln Plaza
500 N. Akard St.
Dallas, TX 75201-6659

Patriot Erectors, Inc.
c/o The Gardner Law Firm, P.C.
Attn: Thomas J. Walthall, Jr.
745 E. Mulberry, Suite 500
San Antonio, Texas 78212